IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ONIBAG FIGUEROA,

     Plaintiff,

v.                                               CV 18-0885 JHR

ANDREW M. SAUL,[1] Commissioner
of the Social Security Administration,

     Defendant.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Plaintiff Onibag Figueroa's Motion to Reverse and Remand for a Rehearing with Supportive Memorandum [Doc. 16], filed February 18, 2019. Pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73(b), the parties have consented to the undersigned Magistrate Judge to conduct dispositive proceedings in this matter, including entry of final judgment. [Docs. 3, 6, 7]. Having studied the parties' positions, the relevant law, and the relevant portions of the Administrative Record ("*AR*"), the Court grants Mr. Figueroa's Motion and remands this case for further administrative fact finding.

## I.    INTRODUCTION

"Adherence to precedent is 'a foundation stone of the rule of law.' … '[I]t promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process.'" *Kisor v. Wilkie*, 139 S. Ct. 2400, 2422 (2019) (quoting *Michigan v. Bay Mills Indian Community*,

---

[1] Andrew M. Saul was sworn in as the Commissioner of Social Security on June 17, 2019. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul is therefore substituted for former Acting Commissioner Nancy A. Berryhill as the Defendant in this suit.

572 U.S. 782, 798, (2014); *Payne v. Tennessee*, 501 U.S. 808, 827 (1991)). The Court finds itself bound by the principles of stare decisis here, insofar as it has ruled upon one of the issues present in this case: the issue of whether a certain number of jobs is sufficient to illustrate "significant numbers" in the national economy. Unfortunately for the Commissioner, the Court is constrained by its own decisions and those of the Tenth Circuit to find that the number of jobs identified by the Administrative Law Judge ("ALJ") in this case (56,000) is not significant as a matter of law. Having so concluded, the ALJ was required to perform the factoral analysis set forth in *Trimiar v. Sullivan*, 966 F.2d 1326 (10th Cir. 1992). Because he did not, the Court reverses and remands the decision of the ALJ in this case for further administrative fact finding.

## II.     BACKGROUND

Mr. Figueroa filed an application with the Social Security Administration for supplemental security income benefits under Title XVI of the Social Security Act on April 14, 2014. *AR* at 417-423. As grounds, Mr. Figueroa alleged the disabling conditions of surgery, aneurism, anxiety and "low back pain remarks." *AR* at 141. Mr. Figueroa alleged that his conditions became severe enough to keep him from working on October 3, 2007. *AR* at 142. The Administration denied Mr. Figueroa's claim initially and upon reconsideration, and he requested a *de novo* hearing before an ALJ. *AR* at 140-219.

ALJ Raul Pardo ("the ALJ") held a hearing on August 3, 2016. *AR* at 67-102. On December 20, 2016, the ALJ issued an unfavorable decision, finding that Mr. Figueroa has not been under a disability as defined in the Act from his alleged onset date through the date of the decision. *AR* at 180-191. In response, Mr. Figueroa filed a Request for Review of Hearing Decision/Order on January 4, 2017. *AR* at 326-328. After reviewing his case, the Appeals Council

granted Mr. Figueroa's request for review on July 10, 2017, finding that he should have been granted a supplemental hearing. *AR* at 200-202.

The ALJ held a second hearing on October 6, 2017, at which Mr. Figueroa and a Vocational Expert ("VE") testified. *See AR* at 104-139. After this hearing, the ALJ issued a second unfavorable decision on November 1, 2017. *AR* at 41-66. In response, Mr. Figueroa filed a Request for Review of Hearing Decision/Order on November 28, 2017. *AR* at 414-416. After reviewing his case, the Appeals Council denied Mr. Figueroa's request for review on July 26, 2018. *AR* at 1-3. As such, the ALJ's decision became the final decision of the Commissioner. *Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003). This Court now has jurisdiction to review the decision pursuant to 42 U.S.C. § 405(g) and 20 C.F.R. § 422.210(a).

A claimant seeking disability benefits must establish that he is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a). The Commissioner must use a five-step sequential evaluation process to determine eligibility for benefits. 20 C.F.R. § 416.920(a)(4).[2]

At Step One of the sequential evaluation process, the ALJ found that Mr. Figueroa has not engaged in substantial gainful activity from his amended onset date (December 18, 2012) through

---

[2] The Tenth Circuit summarized these steps in *Allman v. Colvin*, 813 F.3d 1326, 1333 n.1 (10th Cir. 2016):
> At step one, the ALJ must determine whether a claimant presently is engaged in a substantially gainful activity. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). If not, the ALJ then decides whether the claimant has a medically severe impairment at step two. *Id.* If so, at step three, the ALJ determines whether the impairment is "equivalent to a condition 'listed in the appendix of the relevant disability regulation.'" *Id.* (quoting *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004)). Absent a match in the listings, the ALJ must decide at step four whether the claimant's impairment prevents him from performing his past relevant work. *Id.* Even if so, the ALJ must determine at step five whether the claimant has the RFC to "perform other work in the national economy." *Id.*

the date of the decision. *AR* at 50. At Step Two, he determined that Mr. Figueroa has the severe impairments of "2007 aneurysm, depression, anxiety, borderline intellectual functioning, substance abuse in remission, and degenerative disc disease[.]" *AR* at 50. At Step Three, the ALJ concluded that Mr. Figueroa's impairments, individually and in combination, do not meet or medically equal the regulatory "listings." *AR* at 50-51. Mr. Figueroa does not challenge these findings on appeal. [*See* Doc. 16].

When a claimant does not meet a listed impairment, the ALJ must determine his residual functional capacity ("RFC"). 20 C.F.R. § 416.920(e). "RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." SSR 96-8p, 1996 WL 374184, at *2. "RFC is not the *least* an individual can do despite his or her limitations or restrictions, but the *most*." SSR 96-8p, 1996 WL 374184, at *1. In this case, the ALJ determined that Mr. Figueroa retains the RFC to:

> lift no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. The claimant is able to stand and walk for approximately six hours in an eight-hour workday and sit for six hours in an eight-hour workday. He can frequently reach and handle with the bilateral upper extremities. The claimant is limited to simple, routine tasks. He can have occasional contact with co-workers and the public. I find that this is a limited range of work contained in the medium exertional level as defined by 20 CFR 404.1567, 20 CFR 416.967 and SSR 83-10.

*AR* at 51.

Employing this RFC at Steps Four and Five, and relying on the testimony of the VE, the ALJ determined that Mr. Figueroa cannot return to his past relevant work as a heavy driver. *AR* at 57. However, the ALJ found that there were jobs that exist in "significant numbers" in the national economy that Mr. Figueroa can perform despite his limitations. *AR* at 57-58. Specifically, the ALJ

determined that Mr. Figueroa retains the functional capacity to work as a hospital cleaner (40,000 jobs nationally) or wall cleaner (16,000 jobs nationally). *AR* at 28. Accordingly, the ALJ determined that Mr. Figueroa is not disabled as defined in the Social Security Act and denied benefits. *AR* at 58.

## III.    LEGAL STANDARDS

This Court "review[s] the Commissioner's decision to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (quoting *Mays v. Colvin*, 739 F.3d 569, 571 (10th Cir. 2014)). A deficiency in either area is grounds for remand. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012). "[T]he agency's 'failure to apply the correct legal standards, or to show [the Court] that it has done so' is 'grounds for reversal.'" *Bryant v. Comm'r, SSA*, 753 F. App'x 637, 640 (10th Cir. 2018) (unpublished) (quoting *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996)). Importantly, the Court cannot "presume to interpose [its] judgment for that of the ALJ." *Trimiar v. Sullivan*, 966 F.2d 1326, 1330 (10th Cir. 1992).

## IV.    ANALYSIS

In addition to the Step Five error requiring remand, Mr. Figueroa raises a number of issues related to the ALJ's weighing of the medical evidence and subsequent RFC findings. [*See generally* Doc. 16]. Because the Court concludes that the ALJ erred as a matter of law by neglecting to make the required factual finding of whether or not the jobs at issue were "significant" in Mr. Figueroa's case, the Court will not address his other claims of error "because they may be affected by the ALJ's treatment of this case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003); *see also Bryant*, 753 F. App'x at 643 (citing *Watkins* for this proposition).

In *Trimiar v. Sullivan*, 966 F.2d 1326, 1330 (10th Cir. 1992), the Tenth Circuit held that "[an] [administrative law] judge should consider many criteria in determining whether work exists in significant numbers" in the national economy. This principle has been tempered, and an ALJ is not required to perform a *Trimiar* analysis where the number of national jobs at issue is "much larger" than the 650 to 900 regional jobs at issue there. *See Raymond v. Astrue*, 621 F.3d 1269, 1274 (10th Cir. 2009). Thus, while the Tenth Circuit "has never drawn a bright line establishing the number of jobs necessary to constitute a 'significant number[,]'" *Trimiar*, 966 F.2d at 1330, it has indicated that the lowest number that will suffice for harmless error review is 152,000. *See Evans*, 640 F. App'x 731, 736 (10th Cir. 2016) (unpublished) ("As *Trimiar* pointed out, there is no bright-line answer to how many jobs are enough for a court to say, as a matter of law, that the number is significant, but the number appears to be somewhere between 100, the number of jobs in *Allen* that we refused to consider significant for harmless-error purposes, and 152,000, the lowest number of jobs we have considered (in *Stokes* ) to be sufficient so far for application of harmless error.").

Unfortunately for the Commissioner, the number of jobs identified by the ALJ in this case (56,000) is far lower than the 152,000 accepted by the Tenth Circuit. Thus, the ALJ was required to conduct a *Trimiar* analysis, which he did not. *See AR* at 57-58. Still, the Commissioner argues that "56,000 jobs constituted significant numbers." [*See* Doc. 18, p. 23 (citing *Rogers v. Astrue*, 312 F. App'x 138, 142 (10th Cir. 2009) (unpublished)). However, this Court has rejected this very argument. *See Laney v. Berryhill*, CV 17-1062 JHR, 2019 WL 586660, at *1 (D.N.M. Feb. 12, 2019); *Roybal v. Berryhill*, CV 17-1045 JHR, 2019 WL 318387, at *4 (D.N.M. Jan. 24, 2019).

*Laney* and *Roybal* followed two other cases where this Court declined to find low numbers of jobs in the national economy to be "significant" as a matter of law where the ALJ failed to make

that factual finding in his decision. *See Crockett v. Berryhill*, CV 17-0955 JHR, 2018 WL 6250602 (D.N.M. Nov. 29, 2018) (6,400 jobs); *Brandenburg v. Berryhill*, CV 17-0507 JB/JHR, Doc. 27 (D.N.M. May 25, 2018), *report and recommendation adopted*, 2018 WL 3062591 (D.N.M. June 21, 2018) (5,200 jobs). The Court so found on the basis of the principles of both horizontal and vertical stare decisis. *See* Black's Law Dictionary, 710 (Fourth Pocket Ed. 2011) (describing horizonal stare decisis as "[t]he doctrine that a court … must adhere to its own prior decisions, unless it finds compelling reasons to overrule itself[,]" and vertical stare decisis as the doctrine that a court must strictly follow the decisions of higher courts in its jurisdiction.). The Commissioner in this case has not given the Court reason to alter its analysis, especially considering the number of jobs at issue in *Laney* (43,000) and *Roybal* (42,724).

As was first discussed in *Brandenburg* and was later reiterated in *Crockett*, *Roybal*, and *Laney*, the pertinent regulation does not permit an ALJ to rely on "[i]solated jobs that exist only in very limited numbers in relatively few locations outside of the region where [a claimant] live[s.]" *See* 20 C.F.R. § 416.966(b) ("Isolated jobs that exist only in very limited numbers in relatively few locations outside of the region where you live are not considered work which exists in the national economy."). Thus, an ALJ must evaluate each case on its individual merits in determining whether work exists in significant numbers in the national economy as applied to a given claimant's factual circumstances. *Trimiar*, 966 F.2d at 1330. For this reason, the Tenth Circuit "has never drawn a bright line establishing the number of jobs necessary to constitute a 'significant number[.]'" *Id.* Rather, an ALJ should consider the "intrinsic" effects of a claimant's impairments when determining whether a certain number of jobs is "significant," "because they prevent the claimant from *accessing* certain jobs in the local or national economy." *Taskila v. Commissioner of Social Security*, 819 F. 3d 902, 906 (6th Cir. 2016). Thus, an ALJ must consider certain factors when

determining whether the number of jobs is significant, including: "the level of the claimant's disability; the reliability of the vocational expert's testimony; the distance the claimant is capable of travelling to engage in the assigned work; the isolated nature of the jobs; the type and availability of such work, and so on." *Trimiar*, 966 F.2d at 1330 (quoting *Jenkins v. Bowen*, 861 F.2d 1083, 1087 (8th Cir. 1988), in turn quoting *Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir.1988)).

It is undisputed that the ALJ did not complete a *Trimiar* analysis as to the 56,000 jobs identified by the VE. This is clear error. *See Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004). The remaining question is whether this Court should find the error to be harmless and recognize 56,000 jobs as significant as a matter of law. *See Evans*, 640 F. App'x at 736; *Raymond*, 621 F.3d at 1274 n.2; *Harmon*, 168 F.3d at 292. The Court declines to do so, for the reasons stated in *Roybal* and *Laney*. That is, the Commissioner has failed to convince the Court that the factors borrowed from the Sixth Circuit in *Trimiar* do not apply here, where the number of available jobs (56,000) does not approach the number of jobs the Tenth Circuit has found to be legally significant. *See Evans*, 640 F. App'x at 736 ("the number appears to be somewhere between 100 . . . and 152,000[.]").

The Commissioner's citation to *Rogers* does not convince the Court otherwise. As was explained in *Roybal¸ see* 2019 WL 318387, at *6, the claimant in *Rogers* did not argue that 11,000 was not a significant number. *See* 312 F. App'x at 141. Thus, the Tenth Circuit's decision did not address the issue. Additionally, the only Tenth Circuit case the Court is aware of to have addressed *Rogers*, *Evans v. Colvin*, does not rely upon it to establish the minimum number of jobs to be enough for harmless error. *See Evans*, 640 F. App'x at 736. Thus, the Commissioner has given this Court no reason to rely on *Rogers* when the Tenth Circuit was unwilling to do so.

As the Tenth Circuit has stated, "each case should be evaluated on its individual merits." *Trimiar*, 966 F.2d at 1330. Therefore, "because the ALJ failed to evaluate the *Trimiar* factors and make specific factual findings regarding the numerical significance requirement, [the Court] cannot properly review this issue." *Rhodes v. Barnhart*, 117 F. App'x 622, 532 (10th Cir. 2004) (unpublished); *see Allen*, 357 F.3d at 1144 (*Trimiar's* insistence on an antecedent exercise of judgment by the ALJ is not novel. On the contrary, it is consistent with, if not compelled by, our broader recognition that as a court acting within the confines of its administrative review authority, we are empowered only to review the ALJ's decision for substantial evidence and … we are not in a position to draw factual conclusions on behalf of the ALJ."). Absent the proper analysis by the ALJ, this Court cannot confidently say that 56,000 jobs, spread across several regions of the country, are significant as a matter of fact, and the Court declines the Commissioner's invitation to find them significant as a matter of law.

V.      **CONCLUSION**

The significant numbers inquiry is a fact question reviewed for substantial evidence, not a legal question to be reviewed as a matter of statutory interpretation. *Taskila*, 819 F.3d at 905. Thus, "[t]he Tenth Circuit has emphasized that 'the issue of numerical significance entails many fact-specific considerations requiring individualized evaluation' and, as such, 'the evaluation should ultimately be left to the ALJ's common sense in weighing the statutory language as applied to a particular claimant's factual situation.'" *Padilla v. Berryhill*, CV 16-0106 KK, 2017 WL 3412089, at *11 (D.N.M. Mar. 28, 2017) (quoting *Allen*, 357 F.3d at 1144). Therefore, unless the number of jobs in a case reaches levels affirmed by the Tenth Circuit as significant as a matter of law, or the court or the Administration change the current regulations to reflect a lower number, this Court declines to apply harmless error in the absence of a proper *Trimiar* analysis. Therefore, because

the ALJ did not comply with *Trimiar* here, the Court must reverse and remand this case for further administrative proceedings.

Wherefore, IT IS THEREFORE ORDERED that Plaintiff Onibag Figueroa's Motion to Reverse and Remand for Rehearing with Supportive Memorandum [Doc. 16], is GRANTED and the decision of the Commissioner is REVERSED AND REMANDED for further proceedings consistent with this decision.

_____
Jerry H. Ritter
U.S. Magistrate Judge
Presiding by Consent